## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PARTNERS OF MASSACHUSETTS, LLC, PARTNERS PHARMACY, LLC, and PARTNERS PHARMACY SERVICES, LLC,**<br><br>           **Plaintiffs,**<br><br>      **v.**<br><br>**JOHN FANTASIA and PAUL SARDAGNOLA,**<br><br>           **Defendants.** | **CASE NO. 2:15-cv-07960-KSH-CLW**<br><br>**Hon. Katharine S. Hayden, U.S.D.J.**<br>**Hon. Cathy L. Waldor, U.S.M.J.**<br><br>**AMENDED COMPLAINT** |

## <u>AMENDED COMPLAINT</u>

### INTRODUCTION

1.      Defendant John Fantasia ("Fantasia") sold his pharmacy business to plaintiff Partners of Massachusetts LLC ("Partners") for $6.7 million, and then colluded with Defendant Paul Sardagnola ("Sardagnola") to establish a competing pharmacy, solicit Partners customers and steal what had been sold to Partners.

2.      Pursuant to an Asset Purchase Agreement dated March 22, 2013 ("APA"), Partners acquired Diversified Specialty Pharmacy, LLC ("DSP"), from Fantasia and co-owner James E. Searson ("Searson").  As part of the transaction, Defendant Fantasia and key employees, including Sardagnola, executed Restrictive Covenants and Employment Agreements, incorporated by reference into the APA.

1

After the transaction closed, pursuant to these contracts, Defendants became

employees of Partners, its sister company, plaintiff Partners Pharmacy, LLC

("Partners Pharmacy"), and plaintiff Partners Pharmacy Services, LLC ("Partners

Pharmacy Services").  These contracts, among other things, prohibited Fantasia

and Sardagnola from competing with Plaintiffs, soliciting clients and/or employees

from Plaintiffs, and interfering with the contracts that DSP transferred to Partners

at closing.  These contracts also prohibited Fantasia and Sardagnola from using and

disclosing confidential business information, trade secrets and other proprietary

information transferred to Partners at closing.

      3.      Eyewitness and forensic evidence confirm that Fantasia and

Sardagnola have clearly breached and violated the agreements between the parties,

as well as New Jersey and Massachusetts law.  For example, in September 2015,

just after receiving his final buy-out payment under the APA and well within his

restricted period, Fantasia (who had left the company months before) and

Sardagnola (who was still an employee of the company) met with a significant

former DSP, and now Partners, customer.  After this meeting, the customer sent

Partners a letter purportedly terminating its contract.  When confronted about this

meeting by Partners, Sardagnola admitted that he and Fantasia met with the

customer to discuss their plan to open a competing pharmacy and to inquire as to

the customer's willingness to change providers.  Similar suspicious events have occurred with other customers.

4.      Plaintiffs seek damages arising from Fantasia's and Sardagnola's material breaches and violations as well as injunctive relief running through the term of their respective Restrictive Covenants: 6 years from the closing (i.e., March 2019) in the case of Fantasia and 1 year from Sardagnola's termination.

## PARTIES

5.      Plaintiff Partners is a limited liability company. The sole member of Partners is plaintiff Partners Pharmacy Services.

6.      Plaintiff Partners Pharmacy is a limited liability company.  The sole member of Partners Pharmacy is plaintiff Partners Pharmacy Services.

7.      Plaintiff Partners Pharmacy Services is a limited liability company. The ultimate members of Partners Pharmacy Services are a New Jersey corporation with its principal place of business in New Jersey; a family trust whose sole trustee is a citizen of New Jersey; and individuals who are citizens of New Jersey, New York, Illinois, and Florida.  No member of Partners Pharmacy Services, LLC is a citizen of Massachusetts.

8.      Defendant Fantasia is an individual residing at 887 Old Connecticut Path, Framingham, Massachusetts.

9.     Defendant Sardagnola is an individual residing at 20 Ladyslipper Drive, Shrewsbury, Massachusetts.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under 28 USC § 1332,   (diversity) because the matter in controversy exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) exclusive of interest and costs, and is between citizens of different states.

11.     This Court has personal jurisdiction over Fantasia because he consented to the jurisdiction of this Court in Section 10.5 of the APA.

12.     This Court has personal jurisdiction over both Defendants because they both had sufficient minimum contacts with the State of New Jersey and the maintenance of this suit against them does not offend traditional notions of fair play and substantial justice.

13.     Venue is proper in this District in that Partners and Fantasia stipulated in Section 10.4 of the APA to venue in New Jersey, waived any objection to venue in New Jersey and agreed to not plead or claim inconvenient forum.

14.     Venue is  also proper in this District, pursuant to 28 U.S.C. § 1391, in that the acts complained of caused injury and damage to Plaintiffs in the State of New Jersey and Defendants are subject to personal jurisdiction in this State.  In addition, New Jersey has a strong interest in providing a forum for its residents and

in enforcing the contractual obligations of parties who contract with New Jersey residents.  New Jersey courts have a substantial interest in providing a forum for the enforcement of contracts entered into in New Jersey and of laws which prohibit tortious interference with prospective business advantage in the State of New Jersey.

## FACTS

### I.    ASSET PURCHASE AGREEMENT

15.    Partners acquired DSP pursuant to the APA dated March 22, 2013 by and among DSP, Fantasia and Searson (collectively "Fantasia et al.") and Partners.

16.    Per the APA, the Purchase Price was $6.7M, which included a Closing Payment of $5.7M plus $1M in Indemnification Escrow to be released pursuant to a formula in the agreement (APA, attached hereto as Exhibit A, § 2.5).

17.    In exchange for the Purchase Price, among other obligations, Fantasia et al. transferred all Assets and provided Selling Parties' Restrictive Covenant Agreements (Ex. A §§ 3.3(h) & (i), and Exs. B and C, attached hereto), and Employee Agreements at closing (Ex. A §§3.3(j) & (k), and Exs. D & E, attached hereto).

18.    The APA states that it is governed by New Jersey law and that the parties "irrevocable and unconditionally" consent to jurisdiction in state or federal

courts in New Jersey for "any litigation arising out of or related to [the APA]…
and the transactions contemplated thereby…."  (Ex. A § 10.5)

19.    As set forth herein, this litigation arises out of and relates to the APA.

**A.    Assets**

20.    The primary Assets DSP transferred to Partners include contracts with
residential care homes ("RCH contracts") (Ex. A §2.1(d)(ii) and associated
Schedule), skilled nursing facility homes ("SNF contracts")(Ex. A §2.1(d)(iii) and
associated Schedule), and other contracts (collectively the "Specified Contracts").

21.    Under the RCH and SNF contracts, DSP/Partners provide commercial
pharmacy services and supply prescription, non-prescription, and other medication
as well as medical supplies and equipment to the customer facilities.

22.    Among the contracts Partners acquired from Fantasia et al. at close
were contracts with Jewish Health Care Center (in Worcester, Massachusetts) and
Christopher House (also in Worcester, Massachusetts).

**B. Restrictive Covenants and Employee Agreements**

**1. Fantasia et al.**

23.    As an essential term of the sale of the business, Fantasia et al. agreed
to and executed a Restrictive Covenant (Ex. B).

24.     In the APA (§3.3(h)) and the Restrictive Covenant, Fantasia et al. acknowledged and agreed to a Restricted Period of **six** years following closing, during which they would:

> (a) **not** compete with Partners in Massachusetts, Connecticut or within a 100 mile radius of Partners' facility in Framingham, Massachusetts (Ex. B ¶1);
>
> (b) **not** solicit Partners' customers (Id. ¶2);
>
> (c) **not** solicit Partners' employees (Id. ¶3); and
>
> (d) **not** use or disclose the Partners' Proprietary Information for the benefit of any person other than Partners (Id. ¶5).

25.     In their Restrictive Covenant Agreement, Fantasia et al. also acknowledged and agreed that the terms were appropriate and lawful.  Specifically, they recited that:

- "the restrictions were reasonable and necessary to protect the legitimate interests of the Buyer";  (Id. ¶ 6)

- "the provisions contained in this Agreement are required to preserve for the Buyer the goodwill it is purchasing"; (Id.)

- "the Buyer would not have entered into the Purchase Agreement in the absence of such restrictions"; (Id.)

- "any violation of such restrictions and provisions will result in irreparable injury to the Buyer"; (Id.) and

- "in the event of any such breach, the Buyer, in addition to any other relief available to it, shall be entitled to temporary and permanent injunctive relief".  (Id.)

26.     Fantasia also agreed to and executed an Employment Agreement that contained similar prohibitions concerning non-competition and non-solicitation and protections of Proprietary Information as his Restrictive Covenant referenced above in par. 23 (Ex. D, § 7).

### 2. **Sardagnola**

27.     As an essential term of the transaction, a key employee of DSP, Paul Sardagnola ("Sardagnola") also agreed to and executed a Restrictive Covenant Agreement and became an employee of Plaintiffs post-close (Ex. C).

28.     In his Restrictive Covenant Agreement, Sardagnola acknowledged and agreed that **during his employment**, and for a restrictive period of **one** year after his termination,  he would:

> (a) safeguard the Plaintiffs' Confidential Information; (¶5)
>
> (b) **not** solicit the Plaintiffs' Customers, or Prospective Customers (defined as a company solicited within the last year of employment); (¶7)
>
> (c) **not** interfere with the Plaintiffs' customer relationships; (¶8)
>
> (d) **not** solicit or interfere with the Plaintiffs' personnel; and (¶9)
>
> (e) **not** compete with the Plaintiffs; (¶ 10).

29.     Sardagnola's Restrictive Covenant Agreement states that it is made in New Jersey (¶ 12.d).

30.     Sardagnola also agreed to and executed an Employment Agreement that contained similar prohibitions concerning non-competition and non-solicitation and protections of Proprietary Information as his Restrictive Covenant referenced above in par. 26 (Ex. E § 7).

## II.     DEFENDANTS' MATERIAL BREACHES OF THE APA AND RESTRICTIVE COVENANT AGREEMENTS

31.     Eye witness and forensic evidence indicates that Fantasia and Sardagnola have taken steps to set up a pharmacy to compete with Plaintiffs, have solicited Plaintiffs' customers, have interfered with Plaintiffs' contracts with their customers, have induced certain customers to attempt to terminate their contracts with Plaintiffs, and have used and disclosed proprietary information belonging to Plaintiffs all in violation of the APA and the Restrictive Covenant Agreements that were material terms of and incorporate by reference into the APA.

32.     By way of example, in July 2015, Fantasia and Sardagnola met with Anne Jette ("Jette"), Director of Campus Clinical Services at Jewish Healthcare Center, which is a customer of Plaintiffs transferred from DSP per the APA.  When confronted about this meeting by Partners on October 1, 2015, Sardagnola admitted that Fantasia discussed with Jette plans to open a competing pharmacy and inquired as to Jette's willingness to change providers.  At the conclusion of this meeting, Sardagnola stated along the lines of "I will do anything to make this

right."[1]  There was no legitimate business purpose related to Plaintiffs for this meeting.

33.     In late July and early August 2015, Sardagnola, Fantasia and Steven Willens ("Willens"), Chief Executive Officer of Jewish Healthcare Center communicated via email regarding "financial information."  There was no legitimate business purpose related to Plaintiffs for these emails, which referenced P&L (profit and loss statement) and an entity described as "Newco", but which also involved the use and disclosure of critical Plaintiffs' proprietary information:

- on July 30, via email Willens requested from Sardagnola "annual budget, and a capital expenditure to start up."  Willens further stated "[b]ase this at the Framingham site [i.e., the former DSP headquarters].  Include in your anticipated fee as a management company for the pharmacy."  Willens added "I know the operation would start slowly and grow.  Probably want to show two years."

- on July 31, Sardagnola emailed Willens indicating that Fantasia was "finishing up a budget.  We should have it to you by tomorrow."

- Fantasia and Sardagnola generated a "sample pharmacy P&L" and emailed the copy of a document called "Pharmacy P&L.xlsx" to Willens on August 1, 2015 which was based on Plaintiffs' confidential information.

- Sardagnola saved multiple versions of this P&L on his laptop provided by Partners under a file folder entitled "Newco," believed to be a reference to "new company."

---

[1] Sardagnola has since executed an affidavit dated October 12, 2015 in which he changes his story and denies this and other admissions.

34.     On September 22, 2015, Sardagnola and Fantasia communicated via email with Michele Carney, President of Somerset Health Care Management Group, which owns Poet's Seat Health Care (a current customer of Partners) and Rutal Shah of Virtus Equity regarding an upcoming meeting scheduled for October 8, 2015.  Virtus Equity is an investment firm specializing in health care services. There was no legitimate business purpose related to Plaintiffs for these communications and the meeting with Virtus Equity.

35.     On September 22, 2015, Fantasia created a document, which he provided to Sardagnola that contains an agenda for the October 8 meeting with Virtus Equity.  This agenda included "presentation[s]" by "HD Smith", a drug wholesaler, and "MHA", a group purchasing organization.  A drug wholesaler and a group purchasing organization would be necessary to start a new pharmacy. There was no legitimate business purpose related to Plaintiffs for this document and the presentations.

36.     By letter dated October 1, 2015, Poet's Seat Health Care purportedly terminated its relationship with Partners.  The "reasons" set forth in the letter, the majority of which were not communicated by Sardagnola (the apparent recipient of the complaints) to Partners, are overstated and are pre-texts for the termination.

37.     On October 9, 2015, Sardagnola emailed a 154 page billing report for August 2015 related to Jewish Health Care Center from his Partners email to his

personal email (sardp@townisp.com). Months earlier, a supervisor at Partners had resolved a billing issue utilizing this report with Jewish Health Care Center. There is no legitimate business reason related to Plaintiffs for Sardagnola emailing this document, which contains proprietary information belonging to Plaintiffs, in October to his personal email account.

38.    On October 15, 2015, Walter Ohanian, Administrator of Christopher House, another former DSP client and now Partners client, requested a copy of its contract with Partners.

39.    On October 22, 2015, John Brennan, Administrator at Taunton Nursing Home, yet another former DSP client and now Partners client, requested a copy of its contract with Partners.

40.    Both Christopher House and Taunton Nursing Home are skilled nursing facilities identified as target accounts in the "Pharmacy P&L.xlsx" generated by Fantasia and Sardagnola, which is referenced above in par. 28. In Plaintiffs' experience, requesting a copy of a contract without apparent justification is a prelude to cancellation.

## FIRST CAUSE OF ACTION
### Breach of Contract (the APA) v. Fantasia

41.    Plaintiffs incorporate by reference the allegations in pars. 1-37 above.

42.    The APA is a binding contract supported by consideration.

43.    Partners has performed under the APA.

12

44.     In the APA, including in Fantasia's Restrictive Covenant Agreement which is a material term of and incorporated by reference into the APA (Ex. B), Fantasia acknowledged and agreed to a Restricted Period of **six** years during which, among other things, he would **not** compete with Partners, **not** solicit clients and **not** use or disclose the Company's Proprietary Information.

45.     Fantasia's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" breach the APA and Restrictive Covenant.

46.     As a direct and proximate result of Fantasia's material breaches, Partners has suffered and will continue to suffer irreparable harm and monetary damages.

47.     Under Section 9 of the APA, Fantasia shall pay Partners legal fees and costs incurred in connection with enforcing its rights under the contract.

## SECOND CAUSE OF ACTION
### Breach of Restrictive Covenant Agreement v. Sardagnola

48.     Plaintiffs incorporate by reference the allegations in pars. 1-44 above.

49.     Sardagnola and Partners Pharmacy entered into a Restrictive Covenant Agreement (Ex. C), in consideration for Sardagnola's continued at-will employment with Partners.

50.     In his Restrictive Covenant Agreement, Sardagnola acknowledged and agreed that **during his employment**, and for a restricted period of **one** year

13

after his termination, he would, among other things, safeguard the Company's Confidential Information, **not** solicit the Company's customers, or prospective customers, **not** interfere with the Company's customer relationships, and **not** compete with the Company.

51.     Sardagnola's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" breach the APA and Restrictive Covenant.

52.     As a direct and proximate result of Sardagnola's material breaches, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## THIRD CAUSE OF ACTION
**Breach of the Implied Covenant of Good Faith and Fair Dealing
v. Fantasia and Sardagnola**

53.     Plaintiffs incorporate by reference the allegations in pars. 1-49 above.

54.     Fantasia is a party to the APA (Ex. A), including in Fantasia's Restrictive Covenant Agreement which is a material term of and incorporated by reference into the APA (Ex. B).  Sardagnola is likewise a party to a Restrictive Covenant Agreement (Ex. C).

55.     The covenant of good faith and fair dealing are implied in all contracts.

56.    Under the implied covenants of good faith and fair dealing, Defendants were prohibited from taking any actions that would have the effect of destroying or injuring Plaintiffs' rights to receive the fruits of their agreements with Defendants, including the APA and the Restrictive Covenant Agreements.

57.    Defendants violated the implied covenants of good faith and fair dealing in numerous ways, described more fully above, including, but not limited to, by:  misappropriating confidential, proprietary business information from Plaintiffs for the purpose of impermissibly forming a competing pharmacy business and soliciting the client contracts Partners acquired from DSP in the asset purchase transaction; and surreptitiously attempting to steal back the business sold to Partners in March 2013 pursuant to the APA.

58.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## FOURTH CAUSE OF ACTION
### Tortious Interference with the Performance of a Contract v. Fantasia

59.    Plaintiffs incorporate by reference the allegations in pars. 1-55 above.

60.    A binding contract (Sardagnola's Restrictive Covenant Agreement—Ex.C) has existed between Partners Pharmacy and Sardagnola since March 22, 2013.

61.    Fantasia knew of the existence of this contract.

62.     Through his actions as set forth above, including but not limited to those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco," Fantasia, intentionally, and with malice towards Partners Pharmacy, induced Sardagnola to violate his contractual obligations with Plaintiffs under the Restrictive Covenant Agreement.

63.     As a direct and proximate result of Fantasia's conduct, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

### FIFTH CAUSE OF ACTION
**Tortious Interference with Economic Relationship**
**v. Fantasia and Sardagnola**

64.     Plaintiffs incorporate by reference the allegations in pars. 1-60 above.

65.     Plaintiffs have an existing and reasonable expectation of economic benefit from Jewish Health Care Center, Poet's Seat Health Care, Christopher House and all other customers

66.     Fantasia and Sardagnola have knowledge of Plaintiffs' expectancy.

67.     Fantasia's and Sardagnola's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" constitute wrongful, intentional interference with Plaintiffs' expectancy.

68.     But for Fantasia's and Sardagnola's interference, Plaintiffs had a reasonable probability of receiving the anticipated economic benefit from Jewish

Health Care Center, Poet's Seat Health Care, Christopher House and all other customers.

69.    As a direct and proximate result of Sardagnola's material breaches, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## SIXTH CAUSE OF ACTION
### Unfair and Deceptive Trade Practices (Mass.G.L.c. 93A§ 11)
### v. Fantasia

70.    Plaintiffs incorporate by reference the allegations in pars. 1-66 above.

71.    Fantasia's Restrictive Covenant indicates it is governed, interpreted and enforced in accordance with Massachusetts law.

72.    Fantasia's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" occurred primarily and substantially in Massachusetts and constitute unfair and deceptive trade practices.

73.    As a direct and proximate result of Fantasia's actions, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## SEVENTH CAUSE OF ACTION
### Misappropriation of Confidential Business Information
### v. Fantasia and Sardagnola

74.    Plaintiffs incorporate by reference the allegations in pars. 1-70 above.

17

75.     The New Jersey common law protects confidential business information and prohibits its misappropriation.

76.     The documents referenced above, including but not limited to the "financial information" referenced in par. 30 constitute confidential business information as defined by New Jersey common law.

77.     Fantasia's and Sardagnola's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" constitute misappropriation and misuse of Plaintiffs' confidential business information for their personal benefit.

78.     Both Fantasia and Sardagnola knew that they had no authorization to use Plaintiffs' confidential business information for their personal benefit.

79.     Plaintiffs have taken reasonable precautions to protect their confidential business information.

80.     As a direct and proximate result of Sardagnola's conduct, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## EIGHTH CAUSE OF ACTION
### Violation of New Jersey Trade Secrets Act (56:15-1 et seq.)
### v. Fantasia and Sardagnola

81.      Plaintiffs incorporate by reference the allegations in pars. 1-77 above.

82.     The New Jersey Trade Secrets Act (56:15-1 et seq.) prohibits the actual or threatened misappropriation of trade secrets.

83.    The documents referenced above, including but not limited to the "financial information" referenced in par. 30 constitute "trade secrets" as defined by the Act.

84.    Fantasia's and Sardagnola's actions set forth above, particularly those with respect to Jewish Health Care Center, Poet's Seat Health Care, and "Newco" constitute misappropriation and misuse of Plaintiffs' trade secrets for their personal benefit.

85.    Both Fantasia and Sardagnola knew per the terms of the APA and exhibits thereto that they had no authorization to use Plaintiffs' trade secrets for their personal benefit.

86.    Plaintiffs have taken reasonable precautions to protect their trade secrets.

87.    As a direct and proximate result of Sardagnola's conduct, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Order that Defendants Fantasia and Sardagnola be preliminarily and permanently enjoined from:

(a) competing directly or indirectly with Plaintiffs;

(b) soliciting Customers and/or Prospective Customers of Plaintiffs; and

(c) using or disclosing confidential business information, trade secrets or other proprietary information.

B.      Order that Defendants Fantasia and Sardagnola immediately return to Plaintiffs all confidential business information, trade secrets or other proprietary information in their possession, custody or control.

C.      Enter Judgment in favor of Plaintiffs on all claims set forth above.

D.      Award Plaintiffs damages in an amount to be determined against Defendants Fantasia and Sardagnola.

E.      Award Plaintiffs up to treble damages against Defendant Fantasia under Massachusetts General Laws Chapter 93A, §11.

F.      Order Defendant Fantasia to pay legal fees under APA Section 9.1 and Massachusetts General Laws Chapter 93A.

G.      Award Plaintiffs such further damages and equitable relief as are just and proper.

Respectfully submitted,

PARTNERS OF MASSACHUSETTS,
LLC, PARTNERS PHARMACY, LLC,
and PARTNERS PHARMACY SERVICES,
LLC

By their attorneys,

/s/ Rosemary Alito

_____

Rosemary Alito (#019011978)
George Barbatsuly (#056421994)
      K&L GATES LLP
One Newark Center, 10th floor
Newark, NJ 07102
Tel: (973)848-4000
george.barbatsuly@klgates.com
Rosemary.Alito@klgates.com

Thomas F. Reilly (BBO #416020)
Christopher J. Cunio (BBO #634518)
MANION GAYNOR & MANNING LLP
125 High Street
Boston, MA 02110
Tel: (617)670-8800
ccunio@mgmlaw.com
treilly@mgmlaw.com

Dated: January 19, 2016

## CERTIFICATION UNDER L. Civ. R. 11.2

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

**K&L GATES LLP**
One Newark Center, Tenth Floor

By:   /s/ Rosemary Alito
        Rosemary Alito

January 19, 2016

## LOCAL RULE 201.1 CERTIFICATION

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because the relief sought is in excess of $150,000, exclusive of interest and costs and any claim for punitive damages; and plaintiff seeks damages beyond monetary damages, including a claim for preliminary and permanent injunctive relief.

**K&L GATES LLP**
One Newark Center, Tenth Floor

By:   /s/ Rosemary Alito
        Rosemary Alito

Dated:  January 19, 2016

## <u>CERTIFICATION OF SERVICE</u>

I certify that, on January 19, 2016, I caused to be filed the attached documents with the Court's ECF system, such that they will be served automatically on all counsel of record.

<u>s/ Rosemary Alito</u>
Rosemary Alito
