UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PARTNERS OF MASSACHUSETTS, LLC,
PARTNERS PHARMACY, LLC, and
PARTNERS PHARMACY SERVICES, LLC,

        *Plaintiffs,*

v.

JOHN FANTASIA and PAUL SARDAGNOLA,

        *Defendants*,

v.

PATRICK DOWNING,

        *Third Party Defendant.*

Civil Action No. 15-7960 (KSH) (CLW)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

    Defendant John Fantasia and his former business partner sold their commercial pharmacy business, Diversified Specialty Pharmacy, LLC ("DSP"), to plaintiff Partners of Massachusetts, LLC, in March 2013 for $6.7M. As part of the transaction, Fantasia agreed to a six-year restrictive covenant which barred competition, solicitation of clients and employees, and interference with DSP contracts transferred to Partners in the sale. Fantasia also entered into an employment agreement with Partners. Things changed considerably two years later, when Partners fired Fantasia on May 15, 2015, and, after some months of negotiation, the parties signed a separation agreement on September 30, 2015.

    The dealings between Partners and Fantasia are governed by five contracts—an Asset Purchase Agreement ("APA"), a restrictive covenant, an employment agreement, an escrow

agreement, and a separation agreement—which track their evolving relationship, first as buyer/seller, then employer/employee, then former employer/fired employee. Each contract contains a choice of law provision directing the application of either New Jersey, New York, Massachusetts, or Delaware law.

On November 6, 2015, Partners sued Fantasia[1] alleging that in the months after he was fired he breached his restrictive covenant by attempting to establish a competing pharmacy business and soliciting Partners' customers and employees. (D.E. 1, Compl. ¶¶ 1-3.) Partners did not seek immediate injunctive relief.

Motion practice began with Fantasia's application to transfer the litigation to the District of Massachusetts, which was denied by written opinion on December 29, 2016. (D.E. 42.) On January 27, 2017, Fantasia answered the complaint and asserted affirmative defenses and counterclaims (D.E. 49), and also filed a third party complaint against Partners' president, Patrick Downing (D.E. 50). Partners moved to dismiss all but one of Fantasia's counterclaims. (D.E. 54.) Shortly afterwards, Downing moved to partially dismiss Fantasia's third party complaint. (D.E. 60.)

While those motions were pending, Partners moved for permission to file a second amended complaint that adds a count against Fantasia for breach of the separation agreement's confidentiality clause. (D.E. 69.) After that motion was briefed, the parties informed the Court that they were engaged in mediation (D.E. 73) and at that point, all pending motions were terminated. The parties revived these motions some months later, this time based on the second amended complaint and amended counterclaims.

---

[1] Partners originally named Paul Sardagnola as a defendant in the suit, but dismissed all claims against him on January 17, 2018 (D.E. 84).

Now before the Court, Partners seeks dismissal of seven of the eight counts in Fantasia's amended counterclaims (D.E. 105). Downing, represented by Partners' counsel, seeks dismissal of two of the three counts in the third party complaint against him. (D.E. 81.) The Court held oral argument on December 4, 2018.

I.      **Legal Standard**

Partners' and Downing's motions to dismiss are brought under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

To survive dismissal where the sufficiency of pleadings is challenged, "a complaint must contain sufficient factual matter, accepted as true" to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Along with sufficiency arguments, Partners argues that the parties' contracts include provisions barring several of the counterclaims. While a district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings," it may properly consider a "document *integral to or explicitly relied* upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

II.     **Fantasia's Responsive Lawsuits against Partners and Downing**

Fantasia's eight counterclaims assert the following causes of action: Count 1 seeks declaratory relief from the restrictive covenant; Count 2 alleges breach of contract for failure to "tender the full purchase price as set forth in the APA"; Count 3 asserts a related claim for the breach of the implied covenant of good faith and fair dealing; Counts 4 through 7 sound in tort, raising claims for defamation, malicious abuse of process, malicious use of process, and

3

interference with advantageous relations; and Count 8 alleges that Partners breached the implied covenant of good faith and fair dealing with respect to the separation agreement. At this time, Partners does not move to dismiss Count 4, which asserts a defamation claim. Additionally, Fantasia has withdrawn Count 6, a claim for malicious use of process. (D.E. 107-1, Opp. Br. 13.)

Downing seeks to dismiss two of the three counts in the third party complaint: Count 2, which asserts a defamation claim, and Count 3, a claim for interference with advantageous relations that mirrors Count 8 of the counterclaims.

### A. Partners' Partial Motion to Dismiss Fantasia's Counterclaims

The Final Pretrial Order addresses the pending motions this way:

> Plaintiffs and Patrick Downing have filed Motions to Dismiss Fantasia's counterclaims and third-party claims. As explained below, if allowed, these Motions will resolve all issues in this case except for Partners' affirmative claims. Plaintiffs filed a renewed Motion to Dismiss all of Fantasia's counterclaims except Defamation (Counterclaim IV) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See Plaintiffs' briefing at DN105; DN109). Similarly, Downing filed a renewed Motion to Dismiss Fantasia's third-party claims for Defamation (Count II) and Interference with Advantageous Relations (Count III). (See Downing's briefing at DN81; DN91). If these Motions are allowed, only two of Fantasia's claims would technically remain: Counterclaim IV for Defamation against Partners; and, Third-Party Claim I for Intentional Interference with Fantasia's Employment Agreement against Downing. However, if this Court grants Downing's Motion to Dismiss Fantasia's third-party defamation claim on the basis that New Jersey's one year statute of limitation bars the claim, see DN81, pp. 3-4, then Fantasia's defamation claim against Partners is also barred—and, Partners would ask this Court to make a corresponding ruling regarding Counterclaim IV. Likewise, if this Court grants Partners' Motion to Dismiss certain of Fantasia's counterclaims on the grounds that Fantasia's Separation Agreement with Partners released all claims against the company and its employees, including Downing, see DN105, pp. 13-15, then Fantasia's third-party claim against Downing for Intentional Interference with his Employment Agreement is also released—and, Downing would ask this Court to make a corresponding ruling regarding Third-Party Claim I.

(D.E. 113, Final Pretrial Order 5.)

Partners' "affirmative claims" against Fantasia referenced in this paragraph are breach of the APA, breach of the implied covenant of good faith and fair dealing, tortious interference with the performance of a contract, tortious interference with economic relationship, unfair and deceptive trade practices, misappropriation of confidential business information, violation of the New Jersey Trade Secrets Act, and breach of the separation agreement. (D.E. 97, 2d Am. Compl. ¶¶ 52-106.)

In the Final Pretrial Order, Partners also indicates its plans for prevailing on its affirmative claims:

> Partners expects to file a Motion for Summary Judgment on Count I (Breach of Fantasia's Restrictive Covenant Agreement), Count IX (Breach of the Separation Agreement), and certain related counts . . . . If Partners and Downing prevail on their pending Motions to Dismiss and Partners ultimately prevails on these claims on summary judgment and is awarded liquated damages due under the Separation Agreement ($138,461), damages based on the valuation of the Restrictive Covenant ($600,000) plus legal fees due under the express terms of both agreements, Partners may elect to forgo its other claims and terminate this case.

(Final Pretrial Order 7.)

If successful on this motion, Partners knocks out counterclaims that serve to defend against its affirmative claims, which paint Fantasia as cheating on his contractual obligations and poaching on Partners' market territory. This begs the question of how Fantasia would file a meaningful opposition to Partners' follow-up summary judgment motion. The very relevant issues of credibility and context, which appear to be central to the theme of Fantasia's counterclaims, would be marginalized. Because discovery is over, absent live testimony subject to cross examination (the most effective "engine" for getting to the truth), there is no way of testing Partners' allegations.

Also to be considered is the interrelated nature of the contracts governing the dealings between Partners and Fantasia. At oral argument, Partners' counsel commented:

> We do recognize that the APA is the overarching document. And that all of the other documents[2] are exhibits to the APA, which amplify the intent and specify the intent of the parties and control the conduct at issue, except obviously the separation agreement that was executed in 201[5].

(D.E. 122, Oral Argument 35.) But counsel also linked the 2015 separation agreement back to the 2013 employment agreement, stating that the latter provides that "[p]ayments of the foregoing severance benefits set forth herein shall be subject to the execution and delivery by the Executive of a separation agreement containing appropriate releases of the Company." (*Id.* at 13; D.E. 105-6, Emp't Agreement § 6(c).) This description of the web of contracts begs another question: Is Partners' assertion correct that the employment agreement he entered in 2013 requires Fantasia to sign a general release of claims against Partners, whenever they might arrive? Put another way, are Fantasia's counterclaims like pins lined up to be knocked over by one big contractual bowling ball rumbling down the lane?

To this point, Fantasia argues that section 6(c) of the employment contract does not contemplate a *general* release, but rather directs that the separation agreement contain "appropriate releases." He argues that in the context of a separation agreement, the release would be limited to claims related to his employment. (Oral Argument 45.) The interconnectedness of these contracts and the disputed scope of the separation agreement's release provision caution against accepting Partners' vigorous contentions that Fantasia has released all claims against it.

This observation leads to what was described at oral argument as the "parallel track" issue. The Court asked Partners' counsel to speak to the proximity of the negotiations for Fantasia's separation agreement and unilateral release, and Partners' ongoing investigation and decision to sue him a few weeks later. Counsel responded:

---

[2] The "other documents" referenced here include the restrictive covenant, the employment agreement, and the escrow agreement.

> In-house counsel was negotiating with [Fantasia's counsel] on the separation agreement. That took a period of months as I indicated, regardless of the parallel track investigation that they were conducting, in-house counsel made the determination that the employment agreement required a payment. The parties reached an agreement. The employment agreement contemplated a unilateral release. Things were happening very fast on a parallel track, which was litigation. That is what happened.

(Oral Argument 16.) The Court then asked whether "the covenant of good faith and fair dealing could . . . be the blunderbuss to break through the . . . ironclad statements in [the separation] agreement," because from Fantasia's perspective, " 'You made me sign this, all the time you knew perfectly well you were going to come at me and you made me release all of my defenses.' " (*Id.* at 17.) Counsel replied:

> Number one, we are entitled to do that. Number two, that is an imaginary world, and things were moving fast in the reality of business, you don't have perfect knowledge at the time, you have perfect knowledge after the fact . . . . They depose in-house counsel, and again things were moving, as your Honor knows, there's one in-house counsel for a huge company. A lot of issues going on. You got business people doing stuff. You got lawyers doing stuff. The timing I will admit, is interesting, but it is inconsequential.

(*Id.* at 17-18.)

Fantasia's counsel refuted the "parallel track" theory:

> Patrick Downing was the CEO who signed the release. He is the person who instituted the investigation. Thomas McKinney is the one who negotiated the release, he is the one who gave the instructions. He told Mr. Downing the suit had been filed. I don't know how they could have been on two separate tracks when it is the same people involved in the investigation and the separation agreement and release.

(*Id.* at 78.)

In light of the foregoing, the Court preserves the following counterclaims: Count 1 seeking declaratory relief from the restrictive covenant; Count 2 alleging breach of contract for failure to pay the full purchase price under the APA; Count 3 asserting the breach of the implied covenant

of good faith and fair dealing; and Count 8 asserting breach of the implied covenant of good faith and fair dealing with respect to the separation agreement.

### B. Partners' Motion to Dismiss Counts 5, 6, and 7

Counts 5, 6, and 7 do not relate to the contractual relationships and the good faith behind Partners' dealings with Fantasia. The general basis for dismissal of these counts, according to Partners' motion, is that Fantasia has insufficiently pled the torts.

Arguing for the dismissal of Count 5, a claim for the tort of malicious abuse of process, Partners asserts that Fantasia has failed to plead the required element of a "further act after the issuance of process . . . representing the perversion of the legitimate use of process." (D.E. 105-1, Partners Br. 26.) Fantasia counters that Partners, "knowing Fantasia is not operating a pharmacy and is not servicing any former clients of Partners, seeks discovery as to the formation, creation and operation of a pharmacy (that they know does not exist) and communications/correspondence with approximately eleven (11) nursing homes in Massachusetts (that Partners knows Fantasia does not service)," thereby using the discovery process for the following improper purposes: "to justify their malicious filing," "prolong litigation," and "require Fantasia to incur attorney's fees." (Opp. Br. 30-31.) Partners refutes these allegations, describing its discovery demands as "highly relevant to the[] claims in this case." (D.E. 109, Reply Br. 11.)

There is a distinction between Count 5 and the malicious use of process claim (Count 6) that Fantasia has voluntarily withdrawn. (Opp. Br. 11.) "[T]he malicious use [of process] is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse [of process] is the employment of a process *in a manner not contemplated by law*." *Baglini v. Lauletta*, 338 N.J. Super. 282, 294 (App. Div. 2001) (emphasis added). Accordingly, a claim for malicious abuse of process requires that "the defendant perform

'further acts' after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Id.* (internal citations omitted); *see also Penwag Prop. Co., Inc. v. Landau*, 148 N.J. Super. 493, 499 (App. Div. 1977) ("In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse.").

In the context of an abuse of process claim, 'process' has been limited to "certain products of litigation that a court issues, such as a summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders." *Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 518 (D.N.J. 2009) (Rodriguez, J.) (internal citations omitted); *see also Read v. Profeta*, No. 15-2637, 2017 WL 123438, at *6 (D.N.J. Jan. 11, 2017) (McNulty, J.) ("[T]his tort generally has a far narrower focus: the misuse of the court's coercive powers or writs.")

Courts have declined to find abuse of process where there is "regular and legitimate use of process, though with a bad intention." *Penwag*, 148 N.J. Super. at 498. In *Penwag*, the defendant, a commercial tenant, successfully defended against a lawsuit brought by his landlord. The lower court also ruled for the defendant in his counterclaim for malicious abuse of process; the landlord appealed that judgment. Reversing the lower court, the appellate court held that because the landlord's lawsuit was a "legitimate use of the judicial process—albeit with unjust and ulterior motives" and "not utilized to accomplish an end outside the legitimate purview of the litigation itself," it lacked "the gist of the [malicious abuse of process] cause of action." *Id.* at 499.

Fantasia relies on *NVR, Inc. v. Davern*, No. 15-5059, 2016 WL 7013459 (D.N.J. Nov. 30, 2016) (Hillman, J.), to support his position that Partners' use of discovery satisfies the "further act" element of malicious abuse of process. In that case, Davern, a former NVR employee, filed a counterclaim for malicious abuse of process alleging that NVR had no reasonable basis to file

9

suit, but rather had pursued litigation to get Davern fired from his new job and "sabotage [his] relationship with [his new employer]." *Id.* at *4. NVR moved to dismiss the counterclaim, arguing that an abuse of process claim cannot advance where the only "process" having occurred was the summons and complaint. NVR also argued that Davern failed to allege a "further act" after the issuance of process that would "plausibly support a conclusion that NVR ha[d] pursued this suit solely to injure Davern." *Id.* at *5. The court rejected both arguments, holding that the summons satisfied the process requirement and NVR's continued litigation of the case "in a manner inconsistent with any realistic potential damages recovery" constituted the required "further act." *Id.*

However, Davern's abuse of process claim was replete with supporting factual allegations that were borne out by the discovery. For example, during deposition, NVR admitted that Davern's alleged conduct had not resulted in lost sales, land opportunities, or employees; and forensic analysis of Davern's devices revealed that he did not access NVR information following his resignation. By contrast, Fantasia's claim rests on a bare assertion that Partners "knows its claims are frivolous" and discovery is being undertaken "for the sole purpose" of harassment, prolonging litigation, and running up Fantasia's legal fees. (Counterclaims ¶¶ 81, 83.) In addition, a series of contracts are relevant in determining the legal significance of the dealings between Partners and Fantasia, whereas NVR and Davern had no non-compete agreement.

For the forgoing reasons, the Court grants Partners' motion to dismiss Count 5.[3]

---

[3] The Court notes the apparent contradiction underlying Fantasia's decision to bring both a claim for malicious abuse of process and a claim for malicious use of process. As stated above, the first can only exist if process is used in a manner not contemplated by law, which contravenes the required showing for malicious use of process—that though process was proper, it lacked reasonable or probable cause.

With respect to Count 7, Partners claims that Fantasia has failed to allege specific lost business opportunities, a necessary element of a claim for the tort of interference with advantageous relations. (Partners Br. 30.) When considering this challenge, what must be remembered is Fantasia's long association in the business and by extension, the business community. In defending, he will likely be examined, as will Partners' witnesses, on contacts with business associates, competitors, and colleagues. Partners paints Fantasia as a cheat on his obligations under the restrictive covenant and confidentiality agreement. Fantasia touts his "stellar business reputation," which he claims has been damaged, asserting he made 154 applications and "after initial positive contact the potential employers inexplicably changed their minds or did not follow-up." In short, the parties' oppressive business relationship that has doomed settlement efforts to date will be laid out one way or another, and the Court finds a reasonable inference can be drawn that Fantasia suffered business consequences sufficient to present evidence on that theory.

At this time, Partners does not move to dismiss Count 4, which asserts a defamation claim, but it has asked the Court to rule consistent with Downing's arguments, which are addressed below.

### C. Downing's Partial Motion to Dismiss

Turning to Downing's motion, he argues that Count 2 of the third party complaint, alleging defamation, is barred by New Jersey's one-year statute of limitations. Fantasia asserts that the three-year limitation period of Massachusetts applies. Count 2 is the only claim that involves a choice of law dispute.

"A federal court sitting in diversity applies the choice-of-law rules of the forum state— here, New Jersey—to determine the controlling law." *Maniscalco v. Brother Int'l (USA) Corp.*,

709 F.3d 202, 206 (3d Cir. 2013). First, the court determines whether an actual conflict exists among the laws of the states with interests in the litigation. *McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 584 (2017). If the court finds no actual conflict, "'the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue.'" *Continental Ins. Co. v. Honeywell Int'l, Inc.*, 234 N.J. 23, 46 (2018) (quoting *Rowe v. Hoffmann-LaRoche, Inc.*, 189 N.J. 615, 621 (2007).

Here, the Court easily finds that a conflict of law exists, and easily finds as well that its ruling is outcome determinative because Fantasia's defamation claim against Downing is only timely if the Massachusetts limitations period applies. New Jersey recently adopted section 142 of the Second Restatement "as the operative choice-of-law rule for resolving statute-of-limitations conflicts." *McCarrell*, 227 N.J. at 574. Section 142 provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
> (1) The forum will apply its own statute of limitations barring the claim.
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>   (a) maintenance of the claim would serve no substantial interest of the forum; and
>   (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflicts of Law § 142 (Am. Law Inst. 1988).

The Court notes that both parties premised their arguments on section 142, subsection 2, which governs when the forum applies its own statute of limitations **permitting** the claim. The applicable language appears in subsection 1, because New Jersey's limitations period **bars** the defamation claim. And so the inquiry is whether "exceptional circumstances of the case make such a result unreasonable."

Comment f supplies guidance when the forum has the shorter statute:

12

> There will be rare situations where the forum will entertain a claim that is barred by its own statute of limitations but not by that of some other state. Thus, the suit will be entertained when the forum believed that under the special circumstances of the case, dismissal of the claim would be unjust. This may be so when through no fault of the plaintiff an alternative forum is not available . . . .

*Id.* at cmt. f. The comment goes on to examine situations where either an alternative forum is unavailable or is available and extremely inconvenient. Throughout comment f, the underlying assumption is that the plaintiff chose the forum and is the party initiating the lawsuit under attack on limitations grounds. Fantasia is a third party plaintiff and argues that his third party lawsuit was "filed in New Jersey out of necessity and practicality" right after the Court denied his motion to transfer venue to Massachusetts. (D.E. 86, Opp. Br. to Downing MTD 11.) Fantasia makes the good point that running a parallel lawsuit for defamation in that state as opposed to filing his third party lawsuit in this action could lead to "duplicative litigation, duplicative discovery, the involvement of similar parties, and finally, the potential of a completely different and conflicting outcome." (*Id.*)

As to whether New Jersey has a substantial interest, the third party complaint refers to New Jersey once, in paragraph two when it describes Partners as having places of business in both Massachusetts and New Jersey and having "elected to bring this litigation in the State of New Jersey." (D.E. 50, 3d Party Compl. ¶ 2.) All other assertions concern Massachusetts. Downing and Fantasia are both residents of Massachusetts. (*Id.* ¶¶ 1-2.) They both work in Massachusetts. (*Id.* ¶¶ 3-4.) Downing fired Fantasia in Massachusetts. (*Id.* ¶ 16.) In November 2015, following the termination, Downing "called a meeting of all Partners' employees in the facility located in Marlborough, Massachusetts" and attributed "the recent loss of clients . . . solely to Fantasia," accusing him of "incompetence and theft" and relaying his plans to sue Fantasia. (*Id.* ¶ 19.) Fantasia's employment search has been unsuccessful, even after 154 applications and "initial

positive contact" with potential employers. (*Id.* ¶ 23.) Fantasia attributes this to Downing "spreading false information about him to potential employers." (*Id.* ¶ 24.) The substantial relationship here is with Massachusetts, not New Jersey.

Additionally, the difference between the limitations periods is two years. The Restatement guidance describes this as a small difference, which signals that preserving the claim would not compromise an important forum policy of protecting against stale claims.

The Court is satisfied that the pertinent analysis in the Restatement counsels applying Massachusetts's three-year limitations period on the defamation claim because under the exceptional circumstances in this case, the presumption that New Jersey's limitations bar would apply is unreasonable. Downing's motion to dismiss Count 2 is denied. Consistent with this ruling, Fantasia's Count 4 defamation claim against Partners is preserved.

Downing also seeks dismissal of Count 3, which the Court preserves for the same reasons set forth above respecting Count 7 of Fantasia's counterclaim against Partners. Both urge dismissal based on insufficient pleading, as to which the Court disagrees.

### III. Conclusion

For the reasons set forth above, Partners' partial motion to dismiss is GRANTED IN PART insofar as Counts 5 and 6 are dismissed, and DENIED IN PART insofar as it seeks to dismiss Counts 1, 2, 3, 7, and 8, and Downing's partial motion to dismiss is DENIED. An appropriate order will follow.

Date: February 11, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J